# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **DONALD L. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:04 CV 182 DJS (LMB)** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying Donald L. Miller's application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. The cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b). Plaintiff has filed a Brief in Support of Complaint (Document Number 7). Defendant has filed a Brief in Support of the Answer. (Doc. No. 9).

## Procedural History

On February 19, 2002, plaintiff filed his application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income, claiming that he became unable to work

due to his disabling condition on February 12, 2002.[1] (Tr. 65). This claim was denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated March 26, 2004. (Tr. 9-13). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on October 22, 2004. (Tr. 2-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481 (2003).

## Evidence Before the ALJ

### A.    ALJ Hearing

Plaintiff's administrative hearing was held on October 9, 2003. (Tr. 32). Plaintiff was present and was represented by a non-attorney from the Disabled American Veterans. (Id.). The ALJ began by summarizing the facts surrounding plaintiff's application for benefits. (Id.). The ALJ stated that plaintiff was 55 years of age, has a twelfth grade education, served in the United States Marine Corps from 1968 to 1993, and worked as a factory worker from 1997 to 2002. (Id.). The ALJ further stated that plaintiff alleged in his application that he became disabled on February 19, 2002, due to back pain, arthritis, migraine headaches, and stomach ulcers. (Id.). The ALJ then admitted a number of exhibits into evidence. (Tr 33).

Plaintiff's representative examined plaintiff, who testified that his back problems prevent him from working. (Id.). Plaintiff stated that the Department of Veteran's Affairs ("VA")

---

[1]The transcript does not contain copies of plaintiff's application for benefits or denial letters.

diagnosed him with degenerative disease[2] of the lumbar[3] spine.  (Id.).  Plaintiff testified that he

does not believe that he could work as a greeter at Wal-Mart because he cannot stand for a

prolonged period of time.  (Id.).  Plaintiff explained that his left leg goes numb after standing for

10 to 15 minutes.  (Tr. 34).  Plaintiff testified that he experiences migraines at least twice a week

that last between an hour-and-a-half to five hours.  (Tr. 34-35).  Plaintiff stated that he takes

medication at the onset of a migraine and then he lies down in a dark room.  (Tr. 35-36).  Plaintiff

testified that he has not gone to the emergency room when he experienced a migraine because he

does not feel that there is anything they could do to treat migraines.  (Tr. 36-37).  Plaintiff stated

that he does not know the cause of his stomach ulcer and that his doctors just give him medication

and advise him to adhere to a diet of bland food.  (Tr. 37).

        Plaintiff's representative then stated to the ALJ that the VA has deemed plaintiff totally

disabled and has awarded him "individual unemployability" since 2000, due to his migraines and

degenerative disk disease.  (Tr. 37-38).  Plaintiff's representative explained that the disability

awarded for plaintiff's migraines arose from plaintiff's military service. (Tr. 38).  Specifically,

plaintiff's representative stated that the migraines were claimed as "trauma concussion syndrome,"

and resulted from a concussion sustained in a car accident while plaintiff was driving to and from

work in his own vehicle.  (Id.).  Plaintiff's representative testified that plaintiff received 50 percent

---

[2]Osteoarthritis, or degenerative joint disease, is characterized by erosion of articular
cartilage.  See Stedman's at 1282.  Pain and loss of function result.  See id.

[3]The back is comprised of the cervical, thoracic and lumbar regions.  In common terms,
the cervical region of the spinal column is the neck; the thoracic region is the main part of the
back; and the lumbar region is the lower back.  There are seven cervical vertebrae, twelve thoracic
vertebrae, and five lumbar vertebrae.  The sacrum lies directly below the fifth lumbar vertebra.
The coccyx, or tail bone, lies below the sacrum.  See J. Stanley McQuade, Medical Information
Systems for Lawyers, § 6:27 (1993).

disability for his migraines and 40 percent disability for his degenerative disk disease of the lumbar spine. (Tr. 39). He stated that plaintiff has been deemed "unemployable" by the VA due to the migraines and degenerative disk disease and that his compensable amount was 80 percent. (Id.).

The ALJ then examined plaintiff, who testified that he had recently moved from Corning, Arkansas to Naylor, Missouri. (Id.). Plaintiff stated that he was divorced and that he lived alone. (Tr. 39-40). Plaintiff testified that he worked in a factory that made store fixtures in Corning, Arkansas for five years, until February of 2002. (Tr. 40). Plaintiff stated that he served in the military for over 24 years. (Id.). Plaintiff testified that he left the service in 1993, at which time he performed odd jobs before he began working at the factory. (Id.).

Plaintiff stated that he moved back to Naylor, Missouri to live in a home that was owned by his family. (Tr. 40-41). Plaintiff testified that he does not raise cattle or any other farm animals. (Tr. 41). Plaintiff stated that his home is located outside of town and that he owns one acre of land. (Tr. 41-42). Plaintiff stated that he operates a four-wheeler when he hunts, but that he does not own any boats, motorcycles or other recreational vehicles. (Tr. 42).

Plaintiff testified that he began experiencing migraines in 1970, after the automobile accident. (Id.). Plaintiff stated that his doctors have prescribed medication for the migraines and have told him that he has to "learn to live with" them. (Id.). Plaintiff testified that he experiences migraines about two times a week and that he does not know what triggers them. (Tr. 43). Plaintiff stated that his doctors have not discussed potential causes of the migraines with him but they have prescribed pain medication. (Id.). Plaintiff testified that he does not take any pain medication for his back. (Tr. 44). Plaintiff stated that his low back bothers him but he does not

experience any neck pain.  (Id.).

Plaintiff testified that he has been divorced for four months and that his ex-wife lives next door to him.  (Id.).  Plaintiff stated that his ex-wife does not work and that she is financially secure.  (Id.).  Plaintiff testified that he spends a typical day watching television and visiting neighbors.  (Tr. 45).  Plaintiff stated that he lives in the country about 7 or 8 miles from Naylor, which is a very small town located between Corning, Arkansas and Poplar Bluff, Missouri. (Tr. 45-46).  Plaintiff testified that he does some hunting.  (Tr. 45).

Plaintiff testified that he cannot sit still for long periods of time without repositioning himself, due to his back pain.  (Tr. 46).  Plaintiff denied that his back pain was a contributing factor to his recent divorce.  (Id.).  Plaintiff testified that he is unable to engage in activities he used to enjoy, such as walking long distances, fishing, driving tractors, and carpentry.  (Tr. 47). Plaintiff stated that it would take him a week to build a cabinet at the present time where it used to take only a day, because he now has to work while sitting down.  (Id.).  Plaintiff testified that he used to do carpentry work for a living but had to quit because he was unable to climb ladders. (Tr. 48).  Plaintiff stated that he took the job at the factory because he had the option of standing or sitting down.  (Id.).  Plaintiff testified that he eventually had to quit his job at the factory because he was unable to perform the job.  (Tr. 48-49).

The ALJ concluded the hearing by stating that he would look at the medical records and determine whether it was necessary to send plaintiff to see a specialist.

**B.**     **Relevant Medical Records**

The record reveals that plaintiff was treated at the VA Medical Center in Poplar Bluff, Missouri, from April 1994 to June 2002.  (Tr. 79-337).  On April 28, 1994, plaintiff complained

of pain in his feet, particularly his heels. (Tr. 334). Plaintiff was diagnosed with calcaneal spurs.[4] (Id.). Plaintiff underwent x-rays on July 23, 1996, which confirmed the presence of spurs. (Tr. 329). Plaintiff continued to receive treatment for his feet. (Tr. 328, 282, 297-302).

On December 3, 1997, plaintiff complained of low back pain after lifting heavy objects the previous week. (Tr. 324). Plaintiff underwent x-rays, which revealed degenerative osteoarthritis[5] of the lower lumbar spine. (Id.). X-rays taken of the lumbar spine on May 28, 1998 showed no significant change from the December 1997 x-ray. (Tr. 272, 281). After a physical examination, plaintiff was diagnosed with chronic strain of the lumbosacral[6] spine, and mild degenerative osteoarthritis of the lumbosacral spine. (Tr. 265).

On May 18, 1998, plaintiff complained of migraine headaches that had been occurring regularly since his motor vehicle accident in 1970. (Tr. 303-04). Neurologist S. Choudhary found no neurological deficits and noted that the migraines could be treated with prophylactic medications. (Tr. 306).

On May 29, 1998, and April 14, 1999, plaintiff complained of left shoulder pain due to a gun shot wound sustained in 1979. (Tr. 297). X-rays taken on May 28, 1998 revealed deformity of the humeral[7] shaft, multiple metallic fragments, and mild arthritic changes of the

---

[4]A projection from the heel bone. See Stedman's Medical Dictionary, 266 (27th Ed. 2000).

[5]Degenerative joint disease. See Stedman's at 1282.

[6]Relating to the lumbar vertebrae and the sacrum. See Stedman's at 1034.

[7]Relating to the shoulder. See Stedman's at 835.

acromioclavicular[8] joint.  (Tr. 275, 280).  On the same date, plaintiff complained of hearing loss

that had been present for ten years.  (Tr. 276).  After undergoing audiologic tests, plaintiff was

diagnosed with bilateral asymmetric high frequency hearing loss.  (Tr. 279).

On January 6, 2000, plaintiff reported rectal irritation and drainage and migraine

headaches.  (Tr. 228-29).  Shantilal Vithal Karavadia, M.D. diagnosed plaintiff with fecal

incontinence, migraine headaches, and degenerative joint disease.[9]  (Tr. 228, 230).  A barium

enema[10] performed on January 21, 2000 revealed no abnormalities.  (Tr. 222).  Plaintiff also

underwent an MRI[11] of the lumbosacral spine on January 21, 2000, which revealed no evidence of

stenosis[12] or disc herniation.[13]  (Tr. 223-24).

Plaintiff reported painful lesions on both of his feet on May 17, 2000.  (Tr. 181).  Dr.

Karavadia diagnosed him with fungal infection and osteoarthritis.  (Tr. 181).  On July 5, 2000,

plaintiff complained of burning pain and numbness in his left leg and buttocks.  (Tr. 170).  Dr.

Karavadia diagnosed him with chronic osteoarthritis.  (Id.).  Plaintiff complained of increased low

back pain on August 28, 2000.  (Tr. 163).  Plaintiff underwent lumbar x-rays on October 11,

2000, which revealed minimal degenerative osteoarthritis.  (Tr. 156, 162).  He was diagnosed

---

[8]Denoting the articulation and ligaments between the clavicle and the scapula  See Stedman's at 18.

[9]Osteoarthritis.  Stedman's at 513.

[10]A type of contrast enema administered for radiographic study of the lower intestinal tract.  See Stedman's at 595.

[11]Abbreviation for magnetic resonance imaging.  Stedman's at 1135.

[12]Narrowing of the spine.  See Stedman's at 1695.

[13]Extension of disk material into the spinal canal.  See Stedman's at 814.

with minimal arthritis of the lumbar spine. (Tr. 161). Dr. Karavadia again diagnosed plaintiff with osteoarthritis on November 1, 2000, and recommended plaintiff take Extra Strength Tylenol for the arthritis and the back pain. (Tr. 153).

Darwin L. Davis, M.D. stated in an April 12, 2001 note that a CT scan taken of plaintiff's lumbar spine on March 23, 2001 revealed a bulging left disk at L4-5[14] and L5-S1[15], and narrowing of the neural foramina[16] bilaterally. (Tr. 348-49). He expressed the opinion that this was the cause of plaintiff's back pain and leg numbness. (Tr. 348).

A lumbosacral x-ray taken on August 14, 2001 revealed mild degenerative arthritis[17] and mild scoliosis.[18] (Tr. 135). On September 10, 2001, plaintiff complained of lower back pain that radiated down to his left hip, thigh, and calf. (Tr. 137). He also reported numbness in his left foot. (Id.). Upon physical examination, Dr. Choudhary found no significant tenderness, no paraspinal muscle spasm, and no muscular atrophy. (Tr. 138). Dr. Choudhary noted that plaintiff's gait was normal and that he was able to tandem walk and walk on his tiptoes without any difficulty. (Id.). He found plaintiff's range of motion in his spine was within normal limits, although plaintiff complained of pain with motion. (Id.). Dr. Choudhary's impression was chronic back pain, with symptoms suggestive of intermittent radiculopathy,[19] yet no objective

---

[14]Abbreviation for lumbar vertebrae. See Stedman's at 956.

[15]Abbreviation for sacral vertebrae. See Stedman's at 1586.

[16]Openings where the nerve roots leave the spinal cord. See Stedman's at 698, 1206.

[17]Osteoarthritis. Stedman's at 149.

[18]Abnormal curvature of the vertebral column. See Stedman's at 1606.

[19]Disorder of the spinal nerve roots. Stedman's at 1503.

finding to suggest radiculopathy.  (Id.).  Dr. Choudhary expressed the opinion that plaintiff's back pain was due to arthritic changes.  (Id.).

On November 11, 2001, Ihsan Haq, M.D. examined plaintiff and diagnosed him with mild obesity, migraines, gastroesophageal reflux disease,[20] and allergic rhinitis.[21]  (Tr. 121).  On March 12, 2002, plaintiff complained of bloating and abdominal pain.  (Tr. 100, 103).  A bowel study was conducted, which produced unremarkable results.  (Tr. 105).  On May 21, 2002, Dr. Haq diagnosed plaintiff with degenerative joint disease and recommended that plaintiff continue taking Tylenol 3.  (Tr. 85).  Dr. Haq also referred plaintiff to a surgeon for his weak anal sphincter.  (Tr. 84).

Alice Davidson, M.D., a state agency physician, completed a residual functional capacity assessment on April 10, 2002.  (Tr. 338-45).  Dr. Davidson found that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in his ability to push and pull.  (Tr. 339).  Dr. Davidson expressed the opinion that plaintiff had no postural limitations, other than he should only occasionally stoop and crouch.  (Tr. 340).  She further found that plaintiff had no manipulative, visual, or environmental limitations.  (Tr. 341-42).  Finally, Dr. Davidson stated that plaintiff had no communicative limitations except that his ability to hear was limited.  (Tr. 342).

---

[20]A syndrome due to structural or functional incompetence of the lower esophageal sphincter, which permits retrograde flow of acidic gastric juice into the esophagus.  Stedman's at 514.

[21]Inflammation of the nasal mucous membrane associated with hay fever.  See Stedman's at 1566.

# The ALJ's Determination

The ALJ made the following findings:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's degenerative osteoarthrosis of the lumbar spine and migraine headaches are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the following residual functional capacity: medium work.

7.    The claimant's past relevant work as factory worker (operator) did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 404.1565).

8.    The claimant's medically determinable degenerative osteoarthrosis of the lumbar spine and migraine headaches do not prevent the claimant from performing his past relevant work.

9.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(e)).

(Tr. 12).

The ALJ's final decision reads as follows:

> It is the decision of the Administrative Law Judge that, based on the application filed on March 1, 2002, the claimant is not entitled to a period of disability or Disability Insurance Benefits under Sections 216(I) and 223, respectively, of the Social Security Act.

(Tr. 13).

## Discussion

### A.    Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.  See Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  It is not the court's task "to review the evidence and make an independent decision."  See Mapes, 82 F.3d at 262.  If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.  See id.  The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)(citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."  Id.

**B.    The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant has the burden of proving that he or she has a disabling impairment.  See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a claimant are not considered in making the "severity" determination.  See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or

equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work. See 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

## C.    Plaintiff's Claims on Appeal

Plaintiff raises three claims on appeal of the Commissioner's decision. Plaintiff first argues that the ALJ erred in finding that plaintiff's impairments did not meet one of the listed impairments. He next argues that the ALJ erroneously found plaintiff's subjective complaints of pain and limitation not credible. Plaintiff finally argues that the ALJ erred by failing to call a vocational expert to testify at the hearing.

**1.     Listed Impairments**

Plaintiff first argues that the ALJ erred in finding that plaintiff did not meet a listed

impairment. Specifically, plaintiff contends that his impairments meet the listing at

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.  Plaintiff also references the listing for affective

disorders.  Defendant argues that the ALJ properly determined that plaintiff did not meet a listed

impairment.

The burden of proof is on the plaintiff to establish that his or her impairment meets or

equals a listing.  Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  To meet a listing, an

impairment must meet all of the listing's specified criteria.  Id.  An impairment that manifests only

some of these criteria, no matter how severely, does not qualify.  Id. (quoting Sullivan v. Zebley,

493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). Although it is preferable that

ALJs address a specific listing, failure to do so is not reversible error if the record supports the

overall conclusion.  Pepper ex rel Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003).

Listing 1.04 provides as follows:

> *Disorders of the Spine* (e.g. herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise of a nerve root (including the
> cauda equina) or the spinal cord.
> With:
>         A.  Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or
> reflex loss and if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine);
> or
>         B.  Spinal arachnoiditis, confirmed by an operative note or pathology
> report of tissue biopsy, or by appropriate medically acceptable imaging,
> manifested by severe burning or painful dysesthesia, resulting in the need for
> changes in position or posture more than once every 2 hours;
> or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, App. 1 at 443.

In this case, plaintiff fails to explain how his impairments meet a listing.  He points to no medical evidence that would support such a finding.  In fact, the medical evidence in the record reveals that plaintiff's impairments do not meet or equal a listing.  Plaintiff was consistently diagnosed with only mild osteoarthritis of the lower lumbar spine.  (Tr. 265, 156, 161, 162, 135). In September 2001, Dr. Choudhary found no significant tenderness, no paraspinal muscle spasm and no muscular atrophy.  (Tr. 138).  Dr. Choudhary also noted that plaintiff was able to tandem walk and walk on his tiptoes without any difficulty.  (Id.).  In addition, Dr. Choudhary found that plaintiff's range of motion in his spine was within normal limits.  (Id.).  Further, the medical record is devoid of evidence of an affective disorder.  As such, the ALJ properly determined that plaintiff's impairments did not meet a listing.

Accordingly, the undersigned recommends that the decision of the Commissioner denying plaintiff's benefits be affirmed as to this point.

**2.**      **Credibility Determination**

Plaintiff argues that the ALJ erroneously found plaintiff's subjective complaints of pain and limitation not credible.  Plaintiff specifically argues that the ALJ erred by not considering plaintiff's non-exertional limitations.  Defendant contends that the ALJ noted several inconsistencies in the record as a whole that support his finding that plaintiff's allegations of disability are not credible.

"While the claimant has the burden of proving that the disability results from a medically

determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (quoting settlement agreement between Department of Justice and class action plaintiffs who alleged that the Secretary of Health and Human Services unlawfully required objective medical evidence to fully corroborate subjective complaints). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322.

Under Polaski, an ALJ must also consider a claimant's prior work record, observations by third parties and treating and examining doctors, and the claimant's appearance and demeanor at the hearing. 739 F.2d at 1322. In evaluating the evidence of nonexertional impairments, the ALJ is not free to ignore the testimony of the claimant "even if it is uncorroborated by objective medical evidence." Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See Clark v. Chater, 75 F.3d 414, 417 (8th Cir. 1996).

The court finds that the ALJ's credibility determination regarding plaintiff's subjective complaints of pain and limitations is supported by substantial evidence in the record as a whole. Plaintiff claims that the ALJ ignored plaintiff's testimony regarding his chronic back pain and the

functional limitations caused by this pain. Plaintiff mischaracterizes the nature of a finding of pain in the medical evidence. "[T]he question is not whether [plaintiff] suffers any pain; it is whether [plaintiff] is fully credible when [he] claims that [the pain] hurts so much that it prevents [him] from engaging in [his] prior work." Benksin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). Thus, the relevant inquiry is whether or not plaintiff's complaints of pain to a degree of severity to prevent him from working are credible.

In this case, the ALJ properly pointed out Polaski factors and other inconsistencies in the record as a whole that detract from plaintiff's complaints of disabling pain. The ALJ began by discussing the medical evidence. The ALJ first noted that plaintiff's impairments have been treated rather conservatively. This conclusion is supported by the record. Although plaintiff complains of disabling back pain, he testified at the hearing that he does not take any pain medication for his back. (Tr. 44). Rather, plaintiff's treating physicians have only recommended that plaintiff take Tylenol for his back pain. (Tr. 153, 85). A lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). In addition, although a CT scan revealed bulging at L4-5 and L5-S1 and narrowing of the neural foramina, no objective evidence of radiculopathy was found. (Tr. 138, 348-49). Further, Dr. Choudhary noted on September 10, 2001, that plaintiff was able to tandem walk and walk in his tiptoes without any difficulty, and that plaintiff's range of motion in his spine was normal. (Tr. 138).

With regard to plaintiff's migraines and shoulder injury, the ALJ pointed out that these impairments resulted from an automobile accident that occurred in 1970, and that plaintiff continued to work with these impairments. The fact that a claimant worked successfully for a

significant period of time with his or her impairments is inconsistent with a claim of disabling pain. See Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992). The ALJ also noted that plaintiff's migraines only occur sporadically and are controlled with medical attention.

The ALJ next pointed out that plaintiff has little motivation to work because he receives a pension in excess of $2,300.00 per month from the VA. Evidence indicating a lack of motivation to work is relevant as a credibility factor. See Ostronski, 94 F.3d at 419. Finally, the ALJ noted that plaintiff continued to be quite active despite his allegation of disability. Plaintiff testified that he hunts, operates a four-wheeler, and visits neighbors. (Tr. 42, 45). Significant daily activities may be inconsistent with claims of disabling pain. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001).

The ALJ then formulated the following residual functional capacity:

> [a]ccordingly, the undersigned finds the claimant retains the following residual functional capacity: medium work. The claimant can occasionally lift 50 pounds; frequently lift 25 pounds; walk/stand 6 hours in an 8 hour work day; and stoop, crawl, push, pull, climb, crouch, reach, balance, kneel, and handle at an acceptable level.

(Tr. 11). Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 711-712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogemeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Similarly, in making a finding of residual functional capacity, an ALJ may consider non-medical

evidence, although the residual functional capacity finding must be supported by *some* medical evidence. See Lauer, 245 F.3d at 703.

In this case, the ALJ's residual functional capacity determination is supported by substantial evidence. Notably, none of plaintiff's treating physicians imposed any functional restrictions. As previously discussed, Dr. Choudhary noted that plaintiff was able to tandem walk and walk on his tiptoes, and that he had a normal range of motion in his spine. (Tr. 138). In addition, the ALJ's residual functional capacity assessment is consistent with that of the state agency physician, Dr. Davidson. Dr. Davidson expressed the opinion that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in his ability to push and pull. (Tr. 339). Dr. Davidson further found that plaintiff had no postural limitations, other than he should only occasionally stoop and crouch, and that plaintiff had no manipulative, visual, or environmental limitations. (Tr. 341-42). The ALJ's residual functional capacity assessment is also consistent with plaintiff's testimony regarding his daily activities. Plaintiff testified that he is able to hunt, operate four-wheelers, and visit neighbors.

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not fully credible is supported by substantial evidence.

Accordingly, the undersigned recommends that the decision of the Commissioner denying plaintiff's benefits be affirmed as to this point.

## 3.     Vocational Expert Testimony

Plaintiff next argues that the ALJ erred by not calling a vocational expert to testify at the hearing. Defendant contends that the ALJ properly determined that plaintiff could return to his past relevant work and thus was not required to obtain vocational expert testimony.

Throughout the disability determination process, the burden remains on the claimant until she adequately demonstrates an inability to perform her previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work as it exists in the national economy. See Beckley, 152 F.3d at 1059; 20 C.F.R. §§ 404.1520(f), 416.920(f). Plaintiff argues that the ALJ erroneously determined that he could perform his past relevant work as a factory worker. Plaintiff argues that because he had non-exertional impairments, the ALJ was required to call a vocational expert to testify.

The ALJ properly concluded that plaintiff could return to his job as a factory worker. The ALJ found that plaintiff had the residual functional capacity to perform medium work. (Tr. 11). This formulation is supported by the medical evidence above, especially in light of the fact that no doctor has placed any formal limitations on plaintiff or otherwise found him disabled. The ALJ then compared this job with plaintiff's residual functional capacity and determined that he could return to this past relevant work. (Id.). No error is present in this determination by the ALJ.

Plaintiff also claims that the ALJ erred by finding that he had no non-exertional impairments. This court has determined that the ALJ considered plaintiff's subjective complaints and found them to be not fully credible. As explained above, the ALJ also properly determined that

plaintiff could return to his past relevant work. For these reasons, no vocational expert testimony was required. See Reynolds v. Chater, 82 F.3d 254, 258-259 (8th Cir. 1996) (where ALJ properly discredits claimant's complaints of non-exertional impairment, ALJ is not required to consult with vocational expert); Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) ("[u]nder the five-step analysis of social security cases, when a claimant can perform his past relevant work, he is not disabled. Once this decision is made ... the services of a vocational expert are not necessary.") (quoting Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir. 1996)). Thus, no error can be discerned from the ALJ's failure to call a vocational expert to testify.

Accordingly, the undersigned recommends that the decision of the Commissioner denying plaintiff's benefits be affirmed as to this point.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner denying plaintiff's applications for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act be **affirmed**.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this __20th__ day of December, 2005.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE